IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | |
| | § | CASE NO. 14-51427-RBK |
| BETO'S COLLISION, INC. | § § | |
| DEBTOR | § | CHAPTER 11 |

## DEBTOR'S IN POSSESSION PLAN OF REORGANIZATION

BY: *[signature]*
WILLIAM R. DAVIS, JR.
State Bar No. 05565500
LANGLEY & BANACK, INC.
745 E. Mulberry, Suite 900
San Antonio, Texas 78212
Telephone: (210) 736-6600

Attorneys for Beto's Collision, Inc.

# INDEX

ARTICLE I - Definitions ............................................. 3

ARTICLE II - Introduction ............................................ 7

ARTICLE III - Classification of Claims and Interests ............................. 8

ARTICLE IV - General Provisions Applicable to Claims of Creditors ................. 9

ARTICLE V - Means for Execution of the Plan ................................ 14

ARTICLE VI - Modification of the Plan ..................................... 15

ARTICLE VII - Disputed Claims and Objections to Claims ........................ 15

ARTICLE VIII - Retention of Jurisdiction .................................... 16

ARTICLE IX - Executory Contracts ....................................... 19

ARTICLE X - Effect of Confirmation of the Plan .............................. 19

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | |
| | § | CASE NO. 14-51427-RBK |
| BETO'S COLLISION, INC. | § § | |
| DEBTOR | § | CHAPTER 11 |

## OVERVIEW AND IDENTIFICATION OF PROPONENT

Beto's Collision, Inc., the Debtor in Possession (hereinafter referred to as "Debtor"), hereby submits to its Creditors and other parties in interest, its Plan of Reorganization (hereinafter referred to as "the Plan") pursuant to 11 U.S.C. Section 1121 et seq.

## SUMMARY OF PLAN

The Plan provides for the payment of allowed administrative, priority, secured and unsecured creditors from future operations of the business. A more detailed discussion of the Plan and its implementation, together with projections of income and expenses and the time necessary to complete the Plan is found in the Disclosure Statement accompanying the Debtors' Plan of Reorganization. The Plan should be read in conjunction with the Disclosure Statement. Debtor urges all creditors and other parties in interest to consult with legal counsel. The creditors and other parties in interest should not rely on any representations not contained in the Plan and/or Disclosure Statement in making a determination on voting to accept/reject the Plan. A detailed discussion concerning the voting rights of creditors and other parties in interest is contained in the Disclosure Statement.

## ARTICLE I

## DEFINITIONS

Except as otherwise indicated, the terms used in the Plan have the definitions used in the Bankruptcy Code and applicable Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Western District of Texas. In addition, the following terms shall have the following meanings:

1.01 <u>Administrative Claim</u>: Any costs or expenses of administration of the Chapter 11 Case entitled to priority in accordance with the provisions of 11 U.S.C. Section 503(b) and 507(a)(1) of the Bankruptcy Code, to the extent allowed by the Bankruptcy Court, including without limitation,

any actual and necessary expenses of preserving the Debtor's estate, any actual and necessary expenses of operating the business of the Debtor, including loans or other advances to the Debtor in Possession, all compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court pursuant to 11 U.S.C. Section 330, and any fees or charges assessed against the Debtor's estate under Chapter 123 of Title 28, United States Code.

    1.02 <u>Allowed Claim</u>: Any Claim against the Debtor, proof of which was timely and properly filed or, if no Proof of Claim was filed, which has been or hereafter is listed by the Debtor on its schedules as liquidated in amount <u>and</u> not disputed or contingent and, in either case, a Claim as to which no objection to the allowance thereof has been interposed within thirty (30) days after the Effective Date or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is in favor of a Claimant. Unless otherwise specified herein or by Order of the Bankruptcy Court, "Allowed Claim" shall not include interest or penalty on such Claim for the period from and after the Petition Date through the confirmation of the Plan of Reorganization.

    1.03 <u>Bankruptcy Code</u>: The Bankruptcy Reform Act of 1978, as Amended, and set forth in Section 101 <u>et seq.</u> of Title 11, United States Code.

    1.04 <u>Bankruptcy Court</u>: The United States Bankruptcy Court for the Western District of Texas, San Antonio Division, or such other Court as may have jurisdiction over the Chapter 11 Case.

    1.05 <u>Bankruptcy Rules</u>: Shall mean the Federal Rules of Bankruptcy Procedure, as amended and prescribed under 28 U.S.C. Section 2075 (1978), applicable to the captioned Chapter 11 reorganization case.

    1.06 <u>Bar Date: September 29, 2014</u> - The deadline for non-government claims and government claims, established by the Bankruptcy Court as the Bar Date with respect to the Debtor and is the date after which any claims which must be filed will be void and disallowed for purposes of voting and distribution.

    1.07 <u>Claim</u>: A right to payment from the Debtor which is evidenced by a timely filed proof of claim or application for payment which is allowed by the Court, or, if a proof of claim is not filed, a right which otherwise appears in the applicable schedules and (1) is not listed as disputed, contingent or unliquidated, or (2) has been resolved by final order of the Court or pursuant to the terms of this Plan.

    1.08 <u>Confirmation Date</u>: The date of entry of an Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of the Bankruptcy Code.

    1.09 <u>Confirmation Order</u>: Order of the Bankruptcy Court confirming the Plan of Reorganization and approving the transactions contemplated therein.

1.10 <u>Consummation of Plan</u>: Accomplishment of substantially all things contained or provided for in the Plan.

1.11 <u>Contested Claim</u>: Any Claim as to which the Debtor or other party-in-interest has interposed an Objection in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection has not been withdrawn or determined by a Final Order as of the Confirmation Date.

1.12 <u>Court</u>: The United States Bankruptcy Court for the Western District of Texas, San Antonio Division, including the Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

1.13 <u>Creditor</u>: All entities holding claims against the Debtor or its estate for debts, liabilities, demands or claims of any character whatsoever, as defined in Section 101(4) of the Bankruptcy Code.

1.14 <u>Debtor</u>: Beto's Collision, Inc.

1.15 <u>Effective Date</u>: The thirtieth (30th) day following the Confirmation Date.

1.16 <u>Executory Contract</u> : Any contract or agreement between the Debtor and any Person or entity pursuant to which a duty of performance remains on one or both sides.

1.17 <u>Fee Applications</u>: Applications of Professional Persons for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

1.18 <u>Filing Date</u>: May 30, 2014, the date when the captioned case was instituted by the Debtor filing its voluntary Petition pursuant to Chapter 13 of the U.S. Bankruptcy Code.

1.19 <u>Final Order</u>: An order of the Court which, not having been reversed, modified or amended and not being stayed and the time to appeal, to seek review, certiorari or rehearing having expired, and no such appeal, review, certiorari or rehearing is pending, has become conclusive of all matters adjudicated thereby and is in full force and effect.

1.20 <u>Secured Governmental Claim</u>: Any claim for taxes which is secured by a lien upon property under Texas state law or a federal tax claim which is secured by a Notice of Federal Tax Lien.

1.21 <u>Insiders</u>: Persons affiliated with or related to the Debtor -- in particular, the Debtor's owners and relatives.

1.22 <u>Lease</u>: Any Lease of real or personal property which has not terminated according to its own terms prior to the Effective Date or which was not otherwise terminated prior to the Petition Date. Such leases are deemed to be assumed as a part of the confirmation process.

1.23 <u>Order Confirming Plan</u>: The Final Order of the Court determining that the Plan meets the requirements of Chapter 11 of the Bankruptcy Code and is entitled to confirmation.

1.24 <u>Plan</u>: This Plan of Reorganization in its present form or as it may be amended, supplemented or modified from time to time.

1.25 <u>Plan Proponent</u>: The Debtor.

1.26 <u>Priority Claim</u>: Any Claim, to the extent entitled to priority in payment under 11 U.S.C. Section 507(a) of the Bankruptcy Code, other than an Administrative Claim or a Secured or Unsecured Tax Claim.

1.27 <u>Professional Persons</u>: Persons retained to be compensated pursuant to Section 327, 328, 330, 503(b) and/or 1103 of the Bankruptcy Code.

1.28 <u>Property</u>: All property of the estate of the Debtor as defined in Section 541 of the Bankruptcy Code.

1.29 <u>Pro Rata Share</u>: The amount which is the result of multiplying the amount of assets available to a named class of Creditors by that fraction in which the numerator is the allowed amount of a particular Claim in the named class and the denominator is the total of the allowed amounts of all the Claims of the named class.

1.30 <u>Revested Debtor</u>: The Debtor, Beto's Collision, Inc., and as revested pursuant to the Plan with its rights and interests provided in this Plan upon the Confirmation Date. This Plan provides that the Revested Debtor shall own, free from any rights of the Creditors under this Plan, except as specifically provided to the contrary, all property rights which are Property of the Estate. However, should this case be converted to a Chapter 7 case in the future, the property remains property of the estate.

1.31 <u>Schedules</u>: The Schedules and Statement of Financial Affairs filed by the Debtor pursuant to the Bankruptcy Code, as amended from time to time.

1.32 <u>Secured Claim</u>: The Claim of any Creditor of the Debtor who holds a lien, security interest or other security, as that term is defined in Section 101(41) of the Bankruptcy Code, which has been properly perfected as required by law and to the extent of the value of the collateral impressed by the lien, security interest or other security, as determined in accordance with Section 506 of the Bankruptcy Code.

1.33 <u>Small Business Case</u>: A case filed under Chapter 11 of this title in which the Debtor is a small business Debtor.

1.34 <u>Small Business Debtor</u>: A person engaged in commercial or business activities whose aggregate non-contingent, liquidated secured and unsecured debts as of the date of the bankruptcy filing are less than $2,640,394.00.

1.35 <u>Tax Claim</u>: Any Claim of any Person that is entitled to priority treatment and payment under 11 U.S.C. Section 507(a).

1.36 <u>Unimpaired Claim</u>: The Claims that are not impaired under this Plan in accordance with 11 U.S.C. Section 1124.

1.37 <u>Unsecured Claims</u>:

a. The portion of the Claim of any Creditor holding a Secured Claim as to which treatment as an unsecured claim is required or permitted by the provisions of Section 506(a) of the Bankruptcy Code;

b. Any and all other Claims not otherwise provided for in the Plan.

A term in this Plan not otherwise defined herein but used in the Bankruptcy Code shall have the definition assigned to such term in the Bankruptcy Code.

## ARTICLE II

## INTRODUCTION

2.1 On May 30, 2014, Beto's Collision, Inc. (hereinafter the "Debtor") filed its voluntary Petition for Relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, and since such date the Debtor has remained in possession and control of its estate and operated its financial affairs as Debtor in Possession.

2.2 The Plan proposes to pay Creditors up to one hundred percent (100%) of their allowed Claims; however, all allowed administrative secured and priority creditors will be paid in full under the Plan. The allowed Claims of administrative, priority, secured and unsecured creditors will be paid from the income generated in the future. All allowed claims, including administrative, priority, secured and unsecured, will be paid pursuant to the terms contained herein from the Effective Date. The payments to some creditors may extend past the term of the Plan.

2.3 Funds will be disbursed to all classes of Creditors at the time specified on or after the Effective Date to pay the administrative, priority, secured and unsecured Claims in accordance with the provisions for their payment as set forth in this Plan.

# ARTICLE III

## CLASSIFICATION OF CLAIMS

The claims and interests against the Debtor are classified as follows:

### Administrative Claims

The allowed professional fees incurred by the Debtor, including, but not limited to, attorney fees, accounting fees and appraisal fees, along with the other costs and expenses of administration of the Debtors' Chapter 11 bankruptcy case, from May 30, 2014.

### Secured Claims

Class 1. The secured claim of Bexar County.

Class 2. The secured claim of Car-O-Liner Southwest.

Class 3. The secured claim of Citizens State Bank.

Class 4. The secured claims of Compass Bank.

Class 5. The secured claim of the Internal Revenue Service.

Class 6. The secured claim of the Texas Workforce Commission.

Class 7. The secured claim of the Comptroller of Public Accounts.

### Priority Unsecured Claims

Class 8. The priority unsecured claim of the Internal Revenue Service.

### Unsecured Claims

Class 9. All allowed unsecured claims (including creditors with Abstracts of Judgments - no equity to support a secured claim).

### Debtor

Class 10. Claims of Beto's Collision, Inc. equity.

# ARTICLE IV

## A. GENERAL PROVISIONS APPLICABLE TO ALL CLAIMS OF CREDITORS

1. Pursuant to Section 506(a) of the Bankruptcy Code and Bankruptcy Rule 3012, the Court shall determine the value of any claim secured by a lien on property in which the estate has an interest at the confirmation hearing set on the Plan or prior to that time pursuant to a Motion filed by the Debtor to value the property pursuant to 11 U.S.C. Section 506. The claim shall be secured to the extent of the value of the collateral as determined by the Court, and unsecured for the balance, if any. For purposes of voting on the Plan of Reorganization, the Court shall estimate any claim when requested to do so at the hearing on the confirmation if a valuation hearing has not already been held.

2. The Plan provisions which will apply to each class upon confirmation of the Plan need not be further reduced to writing and executed by the parties in order to be binding. However, parties wishing to reduce the provisions of this Plan to writing shall tender all documents effectuating the terms of this Plan to the attorney for the Debtor for approval prior to their execution. Unless otherwise agreed by the parties, the terms of existing written instruments shall control except where in conflict with the provisions of this Plan; where new instruments may be required, they shall conform to the official State Bar of Texas forms where such forms exist.

3. Payments under this Plan shall be due on the first (1st) of each calendar month unless otherwise specifically provided in the treatment of a particular class. The first payment shall commence on the payment date of the month following the Effective Date of the Plan.

## B. PROVISION FOR TREATMENT OF SPECIFIC CLASSES

Administrative claims consist of the professionals who have provided services to the Debtor during the pendency of this Chapter 11 case. These claimants and the estimated amount of their claims are as follows:

| | |
|---|---|
| Langley & Banack, Inc. (Attorneys) | $ 30,000.00 |
| Total Estimated Professional Claims | $ 30,000.00 |

The amount of the professional fees disclosed above is an approximate amount. It is unknown at this time exactly how much money will be incurred in professional fees in this Chapter 11 case. A final determination cannot be made until such time as the case is closed as to reasonable professional fees for the provision of whatever services become necessary in this Chapter 11 case. Any other allowed costs and expenses of administration of the Debtor's Chapter 11 bankruptcy case are also included as administrative claims. These claims will be paid in full at confirmation, less any retainers already received, after approval by the Court of said fees. The anticipated administrative expenses of the Debtor is moderate, with the largest estimated administrative expense claim being the legal fees of Langley & Banack, Inc.

Administrative claims are unimpaired under the Plan and not entitled to vote.

The Class 1 claim consists of the secured claim of Bexar County secured by real and personal property. As of the bankruptcy filing, the Debtor estimated the real and personal property has a market value in excess of the amount owing to Bexar County, and is subject to statutory liens to Bexar County in the approximate amount of $105,22260, as set forth in Bexar County's proof of claim filed on June 3, 2014. The claim included all tax periods through and including tax year 2014. The claim of Bexar County is to be paid through monthly payments of principal and interest (12%) based on a five (5) year term, with equal monthly payments beginning on the 20th day of the month following the Effective Date of the Plan.

Approximately $50,000.00 of the liability owing to Bexar County relates to the 2012 - 2014 ad valorem taxes owed on the Debtor's real property located at 2014 West Avenue, which was leased to HB Collision Center, LLC, who is responsible for the payment of the ad valorem taxes pursuant to its lease with the Debtor. The Debtor plans on pursuing claims against HB Collision for the ad valorem taxes, as well as other amounts under the lease (unpaid rent, percentage rental and property belonging to the Debtor removed by HB Collision), which the Debtor estimates to be in the approximate amount of $115,000.00. The Debtor has begun escrowing for 2014 ad valorem taxes by making monthly tax escrow payments in the amount of $3,000.00 in June to Compass. Any amounts received by the Debtor from HB Collision relating to unpaid ad valorem taxes will be used to pay down the amount owing to Bexar County (if that portion of the tax claim remains outstanding). Based upon the recent foreclosure sale conducted by Compass on the West Avenue property, and its assumption of the ad valorem tax liability relating to the West Avenue property, Bexar County filed an amended claim reflecting the reduced ad valorem tax liability. On July 14, 2014, Bexar County filed an Amended Proof of Claim in the amount of $60,534.09. The amended claim still includes an estimated liability on the West Avenue property for the 2014 real property in the estimated amount of $20,813.12. The Debtor has contacted counsel for Bexar County and requested that the Proof of Claim be amended to reduce the $20,813.12 of the Bexar County Proof of Claim relating to the West Avenue property. The real property was foreclosed by Compass and this tax liability is no longer a liability of the Debtor; therefore, the Debtor believes the correct amount of the Bexar County liability in the amount of $39,720.97. The projected monthly payments are in the amount of $883.55.

The Class 1 claim is deemed to be unimpaired under the Plan and is not entitled to vote.

The Class 2 claim consists of the secured claim of Car-O-Liner Southwest secured by personal property (a Car-O-Liner Bridge). The Debtor estimates the personal property has a market value in the amount of $13,000.00, and is subject to a purchase money security interest to Car-O-Liner Southwest in the approximate amount of $5,000.00 as of the filing of the bankruptcy case. Car-O-Liner Southwest's has not filed a claim. The claim of Car-O-Liner Southwest is to be paid through equal monthly payments of principal and interest (3%) based on a one (1) year term, with equal monthly payments beginning on the first day of the month following the Effective Date of the Plan in the projected amount of $425.00/month (based upon the current outstanding balance owing in the amount of $3,000.00.

The Class 2 claim is deemed to be impaired under the Plan and is entitled to vote.

The Class 3 claim consists of the secured claim of Citizens State Bank secured by accounts receivable, inventory and equipment. The Debtor estimates the personal property has a market value in excess of the secured claim of Citizens State Bank, and is subject to the liens to Citizens State Bank in the approximate amount of $33,173.50, as set forth in Citizens State Bank's proof of claim filed on June 5, 2014. The claim of Citizens State Bank is to be paid in full through equal monthly payments of principal and interest (6%) through continued monthly payments in the amount of $3,000.00 (as the Debtor has been making both prior to and during this case). During the Chapter 11 case, pursuant to the cash collateral agreement entered into between the Debtor and Citizens State Bank, the Debtor has continued making monthly adequate protection payments to Citizens State Bank in the amount of $3,000.00, and continues to reduce the amount owing to Citizens State Bank.

The Class 3 claim is deemed to be impaired under the Plan and is entitled to vote.

The Class 4 claim consists of the secured claims of Compass Bank secured by real property. As noted previously, pursuant to the agreement between the Debtor and Compass Bank, allowing Compass Bank to complete a non-judicial foreclosure of the West Avenue property (which Compass Bank was the successful bidder at a non-judicial foreclosure sale held on July 1, 2014 through a bid in the amount of $809,640.00), the Debtor is reorganizing the balance of the Compass Bank debt secured by the Culebra property through the repayment terms herein. The Debtor estimates the real property (10219 Culebra, San Antonio, TX) has a market value in the approximate amount of $990,000.00 and is subject to a mortgage lien to Compass Bank in the approximate amount of $1,000,000.00 (after the foreclosure sale held on July 1, 2014). The secured claim of Compass Bank is to be paid through equal monthly payments of principal and interest (5%) based on a twenty (20) year amortization and a five (5) year balloon, with payments beginning on the first day of the month following the Effective Date of the Plan in the projected amount of $6,600.00/month. Compass Bank will retain all existing liens until its secured claim has been paid in full. Additionally, Compass Bank retains the right to credit bid on all of its collateral that the Debtor attempts to sell or otherwise liquidate. All additional terms contained in the original loan documents, other than as modified herein, remain controlling going forward. The Debtor is currently making monthly adequate protection payments to Compass in the amount of $4,000.00 beginning in June, 2014, and is making tax escrow payments of $1,000.00/month.

The Class 4 claim is deemed to be impaired under the Plan and is entitled to vote.

The Class 5 claim consists of the secured claim of the Internal Revenue Service which is secured by real and personal property. The Debtor estimates the real and personal property have a market value in the approximate amount of the Internal Revenue Service's secured claim, and is subject to pre-petition Notices of Federal Tax Liens to the Internal Revenue Service in the approximate amount of $476,167.69, as set forth in the Internal Revenue Service's proof of claim filed on June 6, 2014. The majority of the tax liens filed by the Internal Revenue Service were filed prior to the judgment liens abstracted by various creditors' pre-petition. The secured claim of the Internal Revenue Service in the amount of $309,726.26 (excluding penalties ($166,441.43) which are to be waived upon the full payment of the Internal Revenue Service's secured claim as provided

herein) is to be paid through equal monthly payments of principal and interest (3%) based on a ninety (90) month term, with payments beginning on the fifteenth day of the month following the Effective Date of the Plan in the projected amount of $3,847.00/month.

The Class 5 claim is deemed to be impaired under the Plan and entitled to vote.

The Class 6 claim consists of the secured claim of the Texas Workforce Commission secured by property (real and personal) of the estate. The Debtor estimates the property has a market value in excess of the secured claim of the Texas Workforce Commission, and is subject to the pre-petition liens to the Texas Workforce Commission in the amount of $25,911.42, as set forth in the Texas Workforce Commission's proof of claim filed on July 28, 2014. The claim of the Texas Workforce Commission is to be paid through equal monthly payments of principal and interest (4.5%) based on a four (4) year term, with payments beginning on the first day of the second month following the Effective Date of the Plan in the projected amount of $590.87/month.

The Class 6 claim is deemed to be unimpaired under the Plan and is not entitled to vote.

The Class 7 claim consists of the secured claims of the Comptroller of Public Accounts. The Debtor estimates the debt of the Comptroller of Public Accounts to be in the approximate amount of $70,000.00. The Comptroller of Public Accounts has not filed a Proof of Claim as of yet. The Debtor believes that this claim has been partially paid pre-petition, and is reviewing its records to determine the allowed amount of the Comptroller's claim.

The allowed Class 7 secured claim of the Comptroller of Public Accounts will be paid in full through equal monthly payments of principal and interest (4.5%), based on a 4-year term, with monthly payments beginning on the first day of the month following the Effective Date of the Plan. The projected monthly payments are in the amount of $1,596.00.

The Class 7 claim is deemed to be unimpaired under the Plan and entitled to vote.

The Class 8 claim consists of the priority unsecured claims of the Internal Revenue Service. The Debtor estimates the priority unsecured debt of the Internal Revenue Service to be in the estimated amount of $25,000.00 (versus the amount claimed by the Internal Revenue Service in the amount of $54,709.33) based upon the Proof of Claim filed by the Internal Revenue Service on June 6, 2014. The Internal Revenue Service's Proof of Claim includes approximately $37,000.00 in estimated liability for the 1st and 2nd quarters of 2014. The Debtor filed its 1st quarter 2014 Form 941 with the Internal Revenue Service and made the required payments (late) which have not posted in the Internal Revenue Service's records. The Debtor anticipates being able to timely file its 2nd quarter 2041 Form 941 and pay any liability as well. If the Debtor owes any pre-petition tax liability for the pre-petition portion of the 2nd quarter 2014 941, such amount will be paid as a Class 8 creditor.

The allowed Class 8 priority unsecured claim of the Internal Revenue Service will be paid in full through equal monthly payments of principal and interest (3%), based on a 5-year term, with

payments beginning on the fifteenth day of the month following the Effective Date of the Plan. The projected monthly payments are in the amount of $Unknown at this time.

The Class 8 claim is deemed to be unimpaired under the Plan and entitled to vote.

The Class 9 claims consist of the claims of unsecured creditors which existed prior to confirmation. The amount of unsecured claims consist of the claims scheduled on the Debtor's Schedules (Schedule F) filed with the Court, and as amended, and the Proofs of Claim filed in this case. The Proof of Claim deadline runs on September 29, 2014. The Debtor believes that the total amount of allowed unsecured creditors is in the approximate amount of $407,958.00.

AS A RESULT OF THE SECURED CLAIMS OF BEXAR COUNTY, COMPASS BANK, THE INTERNAL REVENUE SERVICE, THE TEXAS WORKFORCE COMMISSION AND THE COMPTROLLER OF PUBLIC ACCOUNTS, THERE IS NO REMAINING EQUITY IN THE DEBTOR'S REAL PROPERTY FOR THE PRE-PETITION ABSTRACTS OF JUDGMENT CREDITORS LIENS TO ATTACH TO. AS A RESULT, THE ABSTRACT OF JUDGMENT CREDITORS CLAIMS WILL BE TREATED AND PAID AS CLASS 9 UNSECURED CREDITORS, AND SUCH AMOUNTS ARE INCLUDED IN THE $407,958.00 AMOUNT OF CLASS 9 ALLOWED UNSECURED CREDITORS. IN CONSIDERATION FOR THIS TREATMENT, THE ABSTRACT OF JUDGMENT LIENS OF THE VARIOUS CREDITORS WILL BE TREATED AS SATISFIED AND RELEASED, AND INVALID UPON THE CONFIRMATION OF THE PLAN OF REORGANIZATION. THE AMOUNT OF THE CLAIM IS NOT EFFECTED AND TO BE PAID THROUGH THE PLAN AS A CLASS 9 CREDITOR.

The Class 9 unsecured claims will be paid 20% of their allowed unsecured claims through equal monthly payments of principal based on a 5-year Plan term, with payments beginning on the first day of the third month following the Effective Date of the Plan. The projected monthly payments are estimated to be in the amount of $1,360.00, and will be disbursed on a pro-rata basis to unsecured creditors based upon the amount of their allowed claims.

The Class 9 claims are deemed to be impaired under the Plan and are entitled to vote.

The Class 10 claims consists of the equity in Beto's Collision, Inc. Humberto Ramirez will continue his ownership interest (100%) in the Debtor as it existed pre-petition. As a result of the Debtor's post-petition operations, and the need for working capital going forward, the Debtor's owner is proposing to contribute $15,000.00 cash as new value to ensure the Plan's success going forward. The funds are needed to recapitalize the business to enable the Debtor to maintain its operations and move forward. The Debtor may not have sufficient cash to acquire required capital equipment items and maintain the cash flow needed to operate its business affairs going forward. Additionally, the Debtor is working at a reduced salary of $2,000.00/month to assist the Debtor with its operations (although the Debtor plans on increasing his salary to the amount of $5,000.00/month at some time in the near future as operations can support it.

The Class 10 claims are unimpaired under the Plan and not entitled to vote.

## ARTICLE V

## MEANS FOR EXECUTION OF THE PLAN

5.01 On or after the Effective Date, and to the extent the claim or claims of the Class 1 through 10 creditors then remain unpaid, such claim or claims of those creditors shall then be paid in accordance with the terms of this Plan. The payments to some creditors may extend past the term of the Plan.

5.02 On or after the Effective Date, and to the extent the claim or claims of any secured creditors then remain unpaid, such claim or claims of said secured creditors shall retain the lien or liens and security interests securing the payment of such claim or claims until said claim or claims are paid in full and in accordance with the terms of Section IV herein. The Debtor's real properties are subject to tax claims to Bexar County, the mortgage claims of Compass Bank, Comptroller of Public Accounts secured claims and the pre-petition Notices of Federal Tax Liens of the Internal Revenue Service. IN ADDITION, THE DEBTOR'S REAL PROPERTY IS SUBJECT TO THE PRE-PETITION ABSTRACT OF JUDGMENTS FILED BY AKZO NOBEL COATINGS, INC., TBF FINANCIAL, LLC, PALAU ELECTRIC, INC., TEXAS MUTUAL INSURANCE CO., GLADWIN PAINT CO. AND CRASH PARTS OF TEXAS, LTD. HOWEVER, BASED UPON THE AMOUNT OF THE SECURED CLAIMS OF BEXAR COUNTY, COMPASS BANK, THE COMPTROLLER OF PUBLIC ACCOUNTS, THE TEXAS WORKFORCE COMMISSION AND THE INTERNAL REVENUE SERVICE, THE ABSTRACT OF JUDGMENTS FILED BY THE VARIOUS PRE-PETITION CREDITORS ARE OF NO VALUE (NO EQUITY IN THE DEBTOR'S REAL PROPERTY FOR THE LIENS TO ATTACH TO), AND ALL ABSTRACT OF JUDGMENT CREDITORS WILL BE TREATED AS CLASS 9 UNSECURED CREDITORS, AND THE RESPECTIVE ABSTRACT OF JUDGMENT LIENS SURRENDERED AND RELEASED IN SATISFACTION OF THEIR TREATMENT UNDER THE PLAN AS CLASS 9 CREDITORS.

If the Debtor is unable to reorganize and perform under the terms of the Plan proposed herein, it is likely that the real properties will be lost to non-judicial foreclosure and the liens and claims of the Abstract of Judgment creditors washed out through the non-judicial foreclosure sale.

5.03 Post-confirmation, the Revested Debtor is authorized to sell all or a part of its assets (at their market values) so long as all of the allowed claims of secured creditors under the Plan are paid in full, or continue to be paid as provided for in the Plan. The lien claims of creditors will automatically attach to any sales proceeds in accordance with their existing lien position. No secured creditor is required to release their liens against the Debtor's real or personal property unless such allowed secured claim is paid in full (to the extent of equity in the real property).

5.04 Property or funds remaining in the estate of the Debtor after all classes of claims have been paid pursuant to the terms of the Plan of Reorganization shall remain and be retained as the property of the Debtor.

## ARTICLE VI.

## MODIFICATION OF THE PLAN

1. The Debtor may modify this Plan at any time prior to confirmation so long as the modification complies with the requirements of Section 1122 and 1123 of the Code. Upon the filing of any such modification with the Court, the Plan as modified becomes the Plan.

2. The Debtor may modify this Plan any time after confirmation upon compliance with Section 1127 of the Code. Notice shall be deemed sufficient if given to each creditor with an unpaid allowed claim in this case. If in the opinion of the court the modification does not materially and adversely affect the interest of the creditors, the Court may modify the Plan without notice to creditors.

## ARTICLE VII.

## DISPUTED CLAIMS AND OBJECTIONS TO CLAIMS

1. The rights afforded in this Plan and the payments and distributions to be made hereunder shall be in complete exchange for, and in full satisfaction, discharge and release of, all existing debts and Claims of any kind, nature, description whatsoever of or against the Debtor or the Debtor in Possession and any of its assets or properties. Except as otherwise provided herein or in the Confirmation Order, upon the Confirmation Date all Claims existing against the Debtor or Debtor in Possession shall be, and are deemed to be exchanged, satisfied, discharged and released in full and all holders of Claims shall be precluded from asserting against the Debtor or its assets or properties any further Claim based upon any act or admission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date.

2. The Confirmation Order shall be a judicial determination discharging the Debtor, except as provided for in this Plan, from all debts that arose before the Confirmation Date and any liability on a Claim that is determined under 11 U.S.C. Section 502 as if such Claim had arisen before the Confirmation Date, whether or not a Proof of Claim based on any such debt or liability is filed under 11 U.S.C. Section 501 and whether or not a Claim based on such Debtor liability is allowed under 11 U.S.C. Section 502. The Debtor will file any claims objections on or before sixty (60) days from the Plan's Effective Date. At present, the Debtor is attempting to resolve any disputes regarding claims with the particular creditor. The Debtor is hopeful that such negotiations will lead to an amicable resolution of any claims disputes; there is no guarantee that the negotiations will lead to a resolution of any disputes.

Upon the Debtor successfully completing the terms of its confirmed Chapter 11 Plan of Reorganization, the Debtor will have no further liability to any creditor of the Debtor, including the Internal Revenue Service, for any and all debts and liabilities included herein (complete discharge of all pre-petition liability and obligations as provided for in the Debtor's Plan).

3. Each holder of an instrument evidencing a Claim shall be provided for in this Plan. No distribution under this Plan shall be made to or on behalf of any holder of such Claim unless or until such certificate or instrument is received or the non-availability of such certificate or instrument is established to the satisfaction of the Debtor or any agent of Debtor. Any such holder who fails to surrender such certificate or instrument or satisfactorily explain its non-availability within one (1) year of the Confirmation Date shall be deemed to have no further claim or interest against the Debtor.

4. The Claims of Classes 1, 6, 7, 8 and 10 are unimpaired by this Plan in accordance with 11 U.S.C. Section 1124.

5. By virtue of their status of being "unimpaired" Classes of Claims, Classes 1, 6, 7, 8 and 10 are deemed to have accepted the Plan pursuant to 11 U.S.C. Section 1126(f) and there is no requirement to solicit the votes of the members of those classes with respect to this Plan.

6. The Claims and Interests of all other Classes are impaired by this Plan and, accordingly, are entitled to vote to accept or reject this Plan.

7. A Class will be held to have accepted this Plan, if the Plan is accepted by at least two-thirds (2/3's) in amount and more than one-half (1/2) in number of the holders of Claims or Interests of each Class that have <u>voted</u> to accept or reject this Plan.

8. In the event that any class entitled to vote on the Plan fails to accept the Plan by the requisite majorities in accordance with 11 U.S.C. Section 1126, the Debtor requests that the Bankruptcy Court confirm the Plan in accordance with 11 U.S.C. Section 1129(b) (cram down).

## **ARTICLE VIII.**

## **RETENTION OF JURISDICTION**

8.1 The Court shall retain jurisdiction of this case after the Confirmation Date until all payments and distributions called for under the Plan have been made and until entry of a final decree, in respect of the following matters:

a. To estimate, classify, allow or disallow claims and direct distributions of funds under the Plan and to hear and determine any controversies pertaining thereto.

b. To hear and determine any and all motions, applications, complaints, adversary proceedings and other matters arising out of or related to the Plan and this case.

c. To sign and implement such orders as it may determine to be appropriate in the event the Order Confirming Plan is for any reason stayed, reversed, revoked or vacated.

d. To liquidate or estimate damages or determine the manner and time for such liquidation or estimation in condition with any contingent or unliquidated claim.

e. To adjudicate all claims to any lien on any property for the Debtor or any proceeds thereof.

f. To adjudicate all claims or controversies arising during the pendency of the Chapter 11 case.

g. To recover all assets and property of the Debtor, wherever located, to the extent necessary for the consummation of this Plan.

h. To hear and determine matters concerning state, local and federal taxes pursuant to Sections 346, 505, 525 and 1146 of the Bankruptcy Code. Debtor, pursuant to this Plan of Reorganization, hereby reserve the right to review and object, if necessary, to the claims of federal and local taxing authorities for tax, penalty and interest assessed (whether paid or outstanding) on income and/or real and personal property of the Debtor, both pre and post-petition.

i. To allow professional fees and reimbursement of the expenses of professionals employed during this case and prior to the Confirmation of the Plan.

8.2 If the Bankruptcy Court abstains from exercising, or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, this Article shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matters.

8.3 The Debtor will file its Application for Entry of Final Decree within one hundred eighty (180) days from the confirmation of the Debtor's Plan unless such deadline is extended by the Court pursuant to a timely Motion requesting such extension.

8.4 U.S. Trustee Fees - The Debtor will pay pre-confirmation fees owed to the U.S. Trustee on or before the Effective Date of the Plan. After confirmation, the Reorganized Debtor will file with the court and serve on the U.S. Trustee quarterly financial reports in a format prescribed by the U.S. Trustee, and pay post-confirmation quarterly fees to the U.S. Trustee until a final decree is entered or the case is converted or dismissed. 28 U.S.C. Section 1930(a)(6).

8.5 Default - Upon default by the Reorganized Debtor, creditors (other than the Internal Revenue Service) are required to provide written notice of such Default to the Reorganized Debtor and its counsel, William R. Davis, Jr. of Langley & Banack, Inc., by certified mail, return receipt requested, and by regular first class mail, and the Reorganized Debtor shall have thirty (30) days from the date of the notice to cure the default. Any defect in such default notice shall toll the running of the thirty (30) day cure period. Notice of default shall be given to the Reorganized Debtor and William R. Davis, Jr. If the Reorganized Debtor fails to cure within the thirty (30) day cure period provided herein, creditors shall be allowed to foreclose their liens/pursue collection as allowed under applicable law without further notice of hearing before the Court, or move to have the

case converted to a case under Chapter 7.

    8.6 The United States (Internal Revenue Service) requests the following default language:

(a)     that the debt owed by the Debtor to the IRS is a non-dischargeable debt, except as otherwise provided for in the Bankruptcy Code, and that if the Debtor should default, the IRS is not subject to the provisions of the Bankruptcy Code so that the IRS can take whatever actions are necessary to collect said debt in the event of default; and

(b)     a failure by the Debtor to make a payment to the IRS pursuant to the terms of the Plan shall be an event of default; as to the IRS, there is an event of default if payment is not received by the 15th day of each month; if there is a default to IRS, IRS must send written demand for payment to the Debtor and said payment must be received by the IRS within fifteen (15) days of the date of the demand letter; the Debtor can receive up to five (5) notices of default from the IRS; however, the fifth default cannot be cured, and the IRS may accelerate its allowed claim(s), past or future, and declare the outstanding amount of such claim(s) to be immediately due and owing, and pursue any and all available state and federal rights and remedies.

(c)     The IRS is bound by the provisions of the confirmed Plan and is barred under Section 1141 from taking any collection action against the Debtor for pre-petition claims during the duration of the Plan (provided there is no default as to the IRS). The period of limitations on collection remains suspended under 26 U.S.C. Sec. 6503(h) for tax periods being paid under the Plan and terminates on the earlier of (1) all required payments to the IRS has been made; or (2) 30 days after the date of a demand letter for which the Debtor failed to cure the default.

(d)     During the terms of the Plan, the Debtor is required to stay current on all tax reporting/tax payments with the Internal Revenue Service. Once the Debtor completes the repayment terms to the Internal Revenue Service contained herein, the penalties and interest which are provided to be discharged herein, are discharged as provided in the Plan. Should the Debtor default in the payments provided in the Plan, and not timely cure such default, default in its post-petition reporting/payments, the Internal Revenue Service is entitled to pursue the collection of all taxes, penalties and interest, less a credit for all payments received.

(e)     As long as the Debtor remains current on the payments provided for in this Plan of Reorganization, the Internal Revenue Service will not pursue collection efforts against any parties who have been assessed any trust fund liability of any debt dealt with in the Plan as a responsible party.

The Texas Workforce Commission and Texas Comptroller of Public Accounts request the following default language:

A failure by the Debtor or Reorganized Debtor to make a Plan payment to an agency of the State of Texas shall be an Event of Default. If the Debtor or Reorganized Debtor fails to cure an Event of Default as to an agency fo the State of Texas within ten (10) days after service of a written notice of default, then that agency may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies available under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in this Court. The Debtor can receive up to five (5) notices of default, however, the fifth default cannot be cured.

## ARTICLE IX.

## EXECUTORY CONTRACTS

9.01 All executory contracts of the Debtor not expressly rejected in writing on or before the Confirmation Date are deemed to be assumed. Rejection is accomplished by filing an Application therefore with the Court together with proof of service of the Application to reject upon all parties affected thereby although the Court's approval of the rejection will not take place until the hearing on Application some time later.

If no agreement has been reached regarding the cure of a lease arrearage (on a lease being assumed), any such pre-petition lease arrearages will be added to the end of the lease term. Should the Debtor default in the lease cure(s), the terms of the applicable lease are controlling.

9.02 All parties to a rejected contract (other than a contract previously rejected by Motion and Order approved by this Court) will have thirty (30) days from and after the date that the order approving rejection becomes a Final Order within which to file a Proof of Claim for damages, if any, resulting from such rejection. The failure to file such Proof of Claim within that period will forever bar the party affected by the rejection from participating in any distribution under the Plan or recovering any payment on any claim on account of such rejection.

## ARTICLE X

## EFFECT OF CONFIRMATION OF PLAN

The provisions of the Plan once confirmed are binding upon the Debtor and all creditors. The confirmation of the Plan vests all property of the estate in the Debtor except as otherwise provided in the Plan. The Debtor's property is free and clear of all claims and interests except as otherwise provided in the Plan. The Debtor is discharged from any debt which arose prior to confirmation, whether maker or guarantor, except as provided for in the Plan, Order Confirming Plan or the Bankruptcy Code upon completing the terms and payments of the Plan of Reorganization.

Date: August 11, 2014.

                              BETO'S COLLISION, INC.

                              BY: _____
                                  HUMBERTO RAMIREZ, President

OF COUNSEL:

BY: _____
    WILLIAM R. DAVIS, JR.
    State Bar No. 05565500
    LANGLEY & BANACK, INC.
    745 E. Mulberry, Suite 900
    San Antonio, Texas 78212
    Telephone: (210) 736-6600

Attorneys for Debtor